H. D. McLean et al., Respondents, *v.* W. E. Burr et al., Appellants.

November 11, 1884.

Deeds of Trust — Payments to Preserve Property — Liens. — A lien for insurance premiums paid by one bondholder to preserve the mortgaged property may be declared and enforced, though the holders of other bonds secured by the deed of trust had no actual notice of such payment.

Appeal from the St. Louis Circuit Court, Lubke, J. *Affirmed.*

Hitchcock, Madill & Finkelnburg, for the appellants.

Overall & Judson, for the respondents.

Bakewell, J., delivered the opinion of the court.

Plaintiffs claim that they are beneficiaries under a deed of trust given to secure certain bonds, etc. Defendants are trustees in the deed, Burr being one of the original trustees, and his co-defendants, Snurmacher and Crane, having been substituted in place of trustees who resigned. This action is brought to recover, from the net proceeds of the foreclosure in the hands of the trustees, certain sums advanced during the existence of the mortgage by plaintiffs, for premiums of insurance effected upon the mortgaged premises. The cause was tried without a jury, and there was a finding and judgment for plaintiff.

There was evidence tending to show the following state of facts : —

On December 11, 1882, the Atlantic Milling Company, a corporation, executed to William E. Burr, Gerard B. Allen, and John Wahl, a deed of trust upon a lot in the city of St. Louis on which was then being erected a four story steam flour mill. The deed was to secure the payment of one hundred bonds of the company, of $1,000 each, with semi-annual coupons of $30 each, attached to each bond. The deed of trust provided that the building and improvements were to be insured during the existence of the deed of trust for at least $100,000, the policies to be assigned to the trustees, and to be satisfactory to them ; and that, in default of such insurance, the premiums may, " in his or their option, be advanced and paid by said party of the third part or assigns, holder or holders of said bonds or coupons ; in which case the sum or sums so advanced and paid shall be a further debt also secured by these presents; and which shall be repaid on demand by said party of the first part, representative, or assigns, to the person or persons advancing the same, together with interest thereon at the rate of ten per cent per annum from date of such advance until repaid."

The deed further provides that, on default and foreclos-

ure, the trustees, after paying costs and expenses, and com-pensation to the trustees, "shall repay to any person or persons who may, under the covenants hereinbefore set forth, have advanced or paid any money for taxes, insur-ance, or judgments upon statutory lien claims, as above provided, all sums so by him or them advanced, and not already repaid, together with interest thereon at the rate of ten per cent per annum from date of such advance until day of repayment."

This deed of trust was foreclosed, and the premises sold by defendants the trustees, on April 4, 1884, for $27,000 cash. Of this sum, after deducting all expenses, etc., about $26,500 remained in the hands of the trustees; and, at the date of the trial, more than enough of this sum re-mained in the hands of the trustees to pay plaintiff's claim and interest in full.

The premises on which the insured property was situated had formerly belonged to Mr. George Bain, who operated there a flour mill called the Atlantic Mills. Afterwards the property was owned and the business conducted by a corporation called the Atlantic Milling Company, of which Bain was president. The mills were being rebuilt, and were nearly completed at the date of the insurance in ques-tion. Before that, whilst they were being put up, the im-provements were insured for about $30,000, to cover builders' risks. This insurance expired at the time the new insurance was taken up. Before the fire, the credit of Mr. Bain and of the Atlantic Milling Company was very good. After the fire the credit of Mr. Bain and of the company was very poor.

The plaintiffs had been in business together, at the date of the insurance, as insurance brokers in St. Louis, for about twenty years. They had placed insurance for Mr. Bain during ten years, and knew him well. They owned five bonds of the Atlantic Milling Company. These bonds had the terms of the deed of trust printed on them. Mr.

Bain applied to plaintiffs to place $113,000 insurance on the premises in question. This application was made early in February, 1883. The premises were considered well worth the insurance at the time; and it was thought by plaintiffs that this amount of insurance was no more than enough to cover the bonds and coupons secured by the deed of trust. The risk was extra-hazardous, and was to be placed in several companies. This took some time, as, more than once, after the agent here had accepted the risk, the foreign company would refuse to ratify the agent's act, and another policy had to be taken out. The insurance was all effected during February. The policies were all to be payable to the trustees under the deed of trust, and to be delivered to them. Both Mr. Wahl and Mr. Burr, trustees in the deed of trust, frequently came to see plaintiffs during February, and manifested interest in the matter, and anxiety that the insurance should be effected. About the first of March the policies were all delivered to Mr. Burr by plaintiffs. He made no objection to the amount of insurance. Neither the milling company nor Mr. Bain were able to pay the premiums; and, on the 1st of March, plaintiffs, who were responsible for the premiums, presented their account to Mr. Bain, and being unable to get the cash, took the notes of the milling company at six and nine months for $5,080.50, the amount of the premiums. Plaintiffs testified that they knew at the time that the Atlantic Milling Company could not pay the premiums, and that they did not know that Mr. Bain would be able to raise the money to do so. But they were willing to advance the money themselves, as they believed that they would have a lien under the deed of trust, and that they were therefore safe. They discounted these notes, and paid the premiums. Mr. Harrison says that the condition of the company and of Bain was known to Mr. Burr, and that he could not have expected that the premiums would be paid by Bain or the company at the time. The company

failed for a very large amount, in April, 1883, before the notes matured. On May 5, 1883, $575.80 was paid on one note by the company; and on July 3, 1883, the company paid $500 on the other note. No more could be collected from the company or Bain. The notes were taken up at maturity by plaintiffs, and are now held by them. About the time that plaintiffs were considering the proposition to take the notes, Harrison had a conversation with Burr, in which Mr. Burr said that the payment of the premiums was a lien under the deed of trust; and, before taking the notes, Harrison, as he did not have his bonds in his possession, went to the recorder's office and copied the provision of the deed of trust as to payment of premiums, to assure himself that he was safe. Harrison and McLean had conversations with Mr. Burr afterwards, in which they spoke of foreclosing the deed of trust to recover their premiums, and in which Mr. Burr said that the money paid for the premiums was well secured under the deed and that they had better let the matter run along. At the time the notes matured, the policies had eight or nine months to run.

Defendants asked the following declarations of law, which were refused by the court: —

" 1. Under the evidence plaintiffs are not entitled to recover.

" 1. If the court finds from the evidence that plaintiffs were employed by the Atlantic Milling Company as insurance brokers to procure insurance upon the property described in the deed of trust; that, in procuring said insurance, they acted as agents of said milling company, for a compensation; that when they presented their bill for premiums to the milling company, said milling company proposed to give them its notes for the amount of the premiums; that plaintiff, thereupon, accepted two notes for the amount due, payable to themselves, and maturing respectively in sixty and ninety days, of all which facts and circumstances, neither the trustees in said deed of trust, nor the other

bondholders under said deed of trust, had any knowledge or notice; that, thereupon, plaintiffs delivered the policies of insurance to defendants without notice of any claim for unpaid premiums; that, afterwards, the Atlantic Milling Company became insolvent, and defaulted in the payment of said notes, then plaintiffs are not entitled to recover in this action, or from these defendants, the amount for which they gave such credit and took said notes, or any part thereof."

At the instance of plaintiffs, the court gave the following declaration of law: —

"If it appears from the evidence that plaintiffs, on or about March 1, 1883, being then holders of bonds secured by the deed of trust, on failure of the Atlantic Milling Company to pay the premiums for the insurance when payment was demanded, advanced the money for such premiums, and paid the respective companies, relying upon the security afforded them as bondholders in making such advances by the provisions in the deed of trust, then they are entitled to recover for the amount of such advances not already paid by the Atlantic Milling Company, notwithstanding plaintiffs, before making such advances took from the Atlantic Milling Company its notes for the amount of said premiums, and, by indorsing and discounting said notes, raised the money advanced by them as aforesaid, said notes being subsequently taken up by plaintiffs on failure of Atlantic Milling Company to pay the same."

We think that there was evidence that fully warranted the judgment. According to the terms of the deed of trust, the plaintiffs, as bondholders, having advanced money to pay premiums of insurance, and thus diminish the risk and enhance the security to the beneficiaries in the deed of trust, were entitled to a lien for repayment, which is prior to that of those who were merely bondholders. There does not seem to have been any concealment or bad faith about the transaction; nor do we see any force in the

suggestion that plaintiffs, by giving this credit to the company, deceived the bondholders and lulled them into any false security. The nature of the transaction is not affected by the fact that plaintiffs were insurance brokers. It is testified that the trustees, or some of them, knew enough of the financial condition of the company and of Mr. Bain to make it reasonable for them to suppose that this large sum for premiums was not paid by the mortgageor. They were aware of the terms of the deed of trust, and there is some evidence that Mr. Burr, before the notes were given for the premiums, had express notice that the premiums had been advanced by the plaintiffs, and that they looked to the deed of trust for security. The testimony is, that the policies by their terms, might be cancelled by the insuring companies at any time, on returning the unearned premiums. As trustees for the creditors, the trustees in the deed of trust knew of the insurance and its amount, were anxious that it should be effected, and acquiesced in the claim of plaintiffs that they were secured by the deed of trust, about the time that the notes were taken by them. The taking of the notes was not in itself any waiver of the lien. The court seems to have found as a fact that plaintiffs made the advance relying on the security afforded them as bondholders by the clause in the deed as to such advances. We do not think that it can be held as a matter of law in the construction of the deed, that notice to the bondholders at the time the advance was made, was essential to enable the persons making it to assert a lien under the deed of trust.

We think the judgment should be affirmed. It is so ordered. All the judges concur.